UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD BATES,

        Plaintiff,

v().

UNITED STATES OF AMERICA,

        Defendant.
_____/

Civil Case No. 18-13028
Honorable Linda V. Parker

## OPINION & ORDER DENYING GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 31)

This lawsuit arises from a two-car collision involving Plaintiff Donald Bates and James Glover, an employee of the United States Department of Veteran Affairs. Glover, while driving his government-issued car, rear-ended Plaintiff. At the time of the collision, Plaintiff—whose car had a flat tire—was traveling in a far-right lane with the car's flashers on. Plaintiff filed this action against Defendant United States of America ("United States" or "Government") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671-2680. Plaintiff alleges that Glover negligently drove his car, leading to the collision and Plaintiff's serious injuries. (Am. Compl., ECF No. 17.) Presently before the Court is the Government's Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56 on July 30, 2020. (ECF No. 31.) The motion has been fully

1

briefed.  (ECF Nos. 32, 33.)  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court denies the Government's motion.

## FACTUAL BACKGROUND

On March 2, 2017, Plaintiff Donald Bates traveled to work using his girlfriend's car because his car "was acting a little funny."  (Bates Dep., Ex. C, ECF No. 31-4 at Pg. ID 213, 57:11-58:5.)  When Plaintiff returned home around 3:30 PM, he noticed one of the tires on his own car was "running low" and decided to get the tire fixed that day at a tire shop.  (*Id.*)  The tire shop, which was about a two-minute drive away, was "so close" that Plaintiff "figured [he] could make it."  (*Id.* at Pg. ID 220, 85:21-86:14.)

As Plaintiff exited his driveway, Plaintiff determined that he "better put [his] flashers on" because he "[couldn't] go as fast as the other people" on the road.  (*Id.*)  The parties do not dispute that a Speedway gas station at the corner of Harris Avenue and Michigan Avenue—which Plaintiff testified is about a 30-second walk from his home—had an air pump.  (*Id.* at Pg. ID 220, 87:23-88:1; McKinnon Dec., Ex. D, ECF No. 31-5 at Pg. ID 255, ¶¶ 2, 7; MSJ, ECF No. 31 at Pg. ID 129.)  Plaintiff did not stop at the Speedway and, instead, turned onto the far-right lane of Michigan Avenue.  (Bates Dep., Ex. C, ECF No. 31-4 at Pg. ID 220, 87:2-88:5.)

2

Michigan Avenue had a posted speed limit of 50 mph, and Plaintiff traveled at approximately 11.4 mph[1] while checking his rearview mirror because the cars in the other lanes were "flying" and he wanted "to make sure there wasn't anybody going to run [him] over." (*Id.* at Pg. ID 220, 87:23-88:5; Pg. ID 221, 90:17-91:3). Still, after Plaintiff traveled a block and half on Michigan Avenue, Glover rear-ended Plaintiff. (*Id.* at Pg. ID 220, 87:2-88:5; Glover Dep. on 9/27/19, Ex. A, ECF No. 31-2 at Pg. ID 149, 7:18-24; Pg. ID 158, 43:1-11.)

At some point before the collision, Glover saw Plaintiff's car ahead. (Glover Dep. on 9/27/19, Ex. A, ECF No. 31-2 at Pg. ID 160, 50:14-18). When he first saw the car, he did not recognize that there was a problem. (*Id.* at Pg. ID 172, 99:4-11.) Once Glover realized Plaintiff's car was moving slower than his own car, Glover understood that he had to move his car or apply his brakes in order to avoid a collision. (*Id.* at Pg. ID 172, 99:4-100:7.) Glover chose not to apply his brakes because, though "[Plaintiff] was going slower than [him], [] [Plaintiff] wasn't stopped." (*Id.*) Instead, Glover began looking at his mirrors to "watch[] for

---

[1] At his deposition, Plaintiff did not recall how slowly he was going, but knew he was traveling slower than the speed limit. (Bates Dep., Ex. C, ECF No. 31-4 at Pg. ID 221, 89:3-25.) Plaintiff's medical records indicate that he reported traveling at a speed of about five mph. (Ex. E, ECF No. 31-6 at Pg. ID 256.) Plaintiff testified that he was driving on Michigan Avenue for 2 minutes. (Bates Dep., Ex. C, ECF No. 31-4 at Pg. ID 220, 88:1-5.) Based on this, along with information regarding the location of the accident, the United States contends that Plaintiff was traveling at 11.4 mph on average. (Sprague Dec., Ex. F, ECF No. 31-7 at Pg. ID 259-60, ¶¶ 1-2.) Plaintiff does not dispute this assertion.

3

other cars in the other lanes" and to see if he could go around Plaintiff's car. (*Id.* at Pg. ID 158, 43:4-6; Pg. ID 172, 99:4-100:7; Glover Dep. on 10/16/19, Ex. B, ECF No. 31-3 at Pg. ID 193, 10:18-23.) There was a car in the left lane. (Glover Dep. on 9/27/19, Ex. A, ECF No. 31-2 at Pg. ID 172, 98:25.) By the time Glover turned from his mirror and looked back at Plaintiff's car, "it was too late": Plaintiff's car appeared to have stopped and Glover hit his brakes all the way down to the floor as hard as he could, but still rear-ended Plaintiff's car. (Bates Dep., Ex. C, ECF No. 31-4 at Pg. ID 223, 100:9-15; Glover Dep. on 10/16/19, Ex. B, ECF No. 31-3 at Pg. ID 193, 10:13-11:18; Glover Dep. on 9/27/19, Ex. A, ECF No. 31-2 at Pg. ID 158, 43:7-11; Pg. ID 162, 59:17-22.)

Although Plaintiff was checking his rearview mirror, he never saw Glover's car prior to the collision. (Bates Dep., Ex. C, ECF No. 31-4 at Pg. ID 221, 91:23-92:1.) Plaintiff ultimately claims that he was injured in this accident and that the injury required surgery. (*Id.* at Pg. ID 218, 79:1-4; Pg. ID 227, 113:17-115:8.)

## LEGAL FRAMEWORK

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Notably, the trial court is not required to construct a

5

party's argument from the record or search out facts from the record supporting those arguments. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]" *InterRoyal Corp.*, 889 F.2d at 111.

## ANALYSIS

The United States raises two arguments in support of its summary judgment motion. First, the undisputed facts establish that Glover did not act negligently. Second, the United States is immune from Plaintiff's suit under Michigan's No–Fault Act because Plaintiff was more than fifty percent (50%) at fault. The Court takes each argument in turn.

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity and subjects the United States to liability for certain "tort

claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. Specifically, the United States is liable under the statute:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346. Pursuant to the plain language of § 1346, the FTCA requires federal courts to apply the law of the jurisdiction in which the alleged tort occurred in determining whether a negligent act or omission has been established. *Id*.; *Fries v. United State*s, 170 F.2d 726, 730 (6th Cir. 1948). Thus, to prevail, Plaintiff must establish that Glover was negligent under Michigan law.

Under Michigan law, in order to "establish a *prima facie* case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000).

Plaintiff contends that summary judgment is not appropriate because the Government is presumptively negligent under Michigan law. (ECF No. 32 at Pg. ID 270.) Plaintiff relies upon Michigan Compiled Law § 257.402. That statute

7

provides that where a driver rear-ends another car, the driver is presumed to have been negligent:

> [I]n any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator.

Mich. Comp. Laws § 257.402(a).

But as Plaintiff acknowledges, the presumption established by Michigan Compiled Law § 257.402 is a rebuttable one. (ECF No. 32 at Pg. ID 270); *see Lucas v. Carson*, 196 N.W.2d 819, 822 (Mich. Ct. App. 1972). And it is well established that the presumption is rebutted where there is a "sudden emergency." *Lucas*, 196 N.W.2d at 822; *see also White v. Taylor Distrib. Co., Inc.*, 753 N.W.2d 591, 593 (Mich. 2008). "The sudden-emergency doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of [a party's] own making." *White*, 753 N.W.2d at 593 (internal quotation marks omitted). The circumstances attending the accident must be "unsuspected" or "unusual." *Vander Laan v. Miedema*, 188 N.W.2d 564, 567 (Mich. 1971).

According to the Michigan Supreme Court, the term "unsuspected" connotes a "potential peril within the everyday movement of traffic." *Id.* As the

8

Government itself explains, "[t]o come within the narrow confines of the sudden emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected." *Id.*; (ECF No. 31 at Pg. ID 137 (citing *Vander Laan*, 385 Mich. at 567).)  Here, the Government fails to establish that the situation was "unsuspected" for two reasons. First, considering the undisputed fact that Plaintiff had his flashers on and the collision occurred during the day, it does not appear that the collision at bar was "totally unexpected" to Glover.  *Cf. Vander Laan*, 385 Mich. at 567 ("[T]he failure of the plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant." (discussing *McKinney v. Anderson*, 129 N.W.2d 851 (Mich. 1964))).

Second, Glover has at no point asserted that Plaintiff's slow-moving vehicle was not in clear view for a significant length of time.  Though Glover "perceived [Plaintiff's] vehicle moving slower than his own vehicle" (ECF No. 32 at Pg. ID 287), neither party in fact provided any information about how long Plaintiff's slow-moving car was actually in Glover's view.  When Plaintiff was asked if he saw "[Glover's] car in [his] rearview mirror," Plaintiff responded, "no."  (Bates Dep., Ex. C, ECF No. 31-4 at Pg. ID 221, 91:23-92:1.)  And when Glover was asked how far ahead Plaintiff's car was when he first saw it, Glover said he would be "guessing" if he responded.  (Glover Dep. on 9/27/19, Ex. A, ECF No. 31-2 at

9

Pg. ID 158, 44:9-17.) When asked if he can "give any sort of an estimate in terms of car lengths," Glover responded, "[n]ot really." (*Id.*) When asked if 10, five, or one second(s) passed between when he saw Plaintiff's car and when he began looking at his mirrors, Glover could not say, responding only that "[it] seemed quick to [him]." (*Id.* at Pg. ID 160, 53:10-13.) When asked if he could state how much time passed from the point he saw Plaintiff's car and the moment of impact, Glover stated that due to the shock of the incident his "perception of time [was] a bit off." (*Id.* at Pg. ID 158, 45:3-8); *cf. Vander Laan*, 385 Mich. at 567 (finding potential peril "unsuspected" where the defendant first saw the taillights of a disabled car when the defendant was about 400 feet away but "did not clearly see the peril of plaintiff's stopping until [the defendant] was about 100-200 feet away" (discussing *McKinney*, 129 N.W.2d 851)). Indeed, because Glover failed to put forth any evidence regarding how long Plaintiff's car was in his view, the Government has failed to show that the potential peril had not been in Glover's clear view for a significant amount of time.

Nor was the situation "unusual." According to the Michigan Supreme Court, the term "unusual" connotes a change in "the everyday traffic routine confronting the motorist." *Vander Laan*, 385 Mich. at 567. "Such an event is typically associated with a phenomenon of nature," such as a blizzard. *Id.* Here, as in *Vander Laan*, "[t]he record . . . reveals that the accident occurred during daylight

10

hours on a dry, paved [road], thereby precluding the possibility that the surrounding circumstances made the situation 'unusual'" and thereby rendering the Government short of its burden of rebutting the statutory presumption of negligence. *Vander Laan*, 385 Mich. at 568. Viewing the facts of the case in the light most favorable to the non-movant, the Court finds the sudden emergency defense inapplicable. Accordingly, the Government has not rebutted the presumption of negligence.

The Court now turns to the Government's second argument—specifically, that it is immune from Plaintiff's suit under Michigan's No–Fault Act because Plaintiff was more than fifty percent (50%) at fault. Michigan Compiled Law § 500.3135(2)(b) prohibits recovery for non-economic damages when a party is found to be more than 50 percent at fault for his or her injuries. Though comparative fault is usually a question of fact for the jury, *see Poch v. Anderson*, 580 N.W.2d 456, 459 (Mich. Ct. App. 1998), the Michigan Supreme Court has held that a court may resolve the comparative fault issue when "no reasonable juror could find that defendant was more at fault than the [plaintiff] in the accident," *Huggins v. Scripter*, 669 N.W.2d 813 (Mich. 2003).

The Court, however, will not resolve the comparative fault issue because, based on the actions of both parties in this case, reasonable jurists could disagree about which party was more than 50 percent at fault. The evidence shows that

Plaintiff elected to drive past a Speedway gas station—which was equipped with an air pump and that was about a 30 second walk from his home—and proceed at about 11.4 mph on a road that had a posted speed limit of 50 mph. But the evidence also shows that Plaintiff put on his flashers in order to warn other drivers, drove in the far-right lane in order to avoid the fastest moving traffic, and drove in broad daylight when drivers presumably had a clear view of the road. Moreover, the evidence demonstrates that, despite recognizing that Plaintiff's car was moving slower than his own, Glover opted to attempt to change lanes while driving "less than 50" miles per hour and at no point applied the brakes while making this attempt.² (*See* Glover Dep. on 9/27/19, Ex. A, ECF No. 31-2 Pg. ID 158, 43:7-22; Pg. ID 172, 99:4-25.) Given the evidence of negligence on the part of both

---

² During his deposition, Glover engaged in the following exchange regarding the speed at which he was traveling:

> [Q]: When you first saw the car that ultimately you struck[,] do you know how fast your vehicle was traveling when you first saw the car?
> [A]: Less than 50.
> [Q]: Okay.
> [A]: Is the speed limit.
> [Q]: The speeds limit is 50 on Michigan Avenue?
> [A]: I wasn't absolutely sure but I knew it was 50 or less. I['m] usually traveling between -- theoretically I'm usually traveling between 40 and 50 unless there's a posted speed limit to go much slower.

(Glover Dep. on 9/27/19, Ex. A, ECF No. 31-2 at Pg. ID 158, 43:7-22.)

12

Plaintiff and Glover, reasonable minds could differ regarding the parties' comparative negligence.

## CONCLUSION

For the reasons discussed above, the Court finds that genuine issues of material fact preclude summary judgment.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 31) is **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: March 25, 2021